IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER JOHNSTON )<br>DARSHARAY ALLEN-SORE )<br>NORMA DELANCEY )<br>RAYMOND DAVENPORT )<br>)<br>Plaintiffs, )<br>)<br>)<br>)<br>v. )<br>)<br>NEW YORK CITY HOUSING )<br>AUTHORITY )<br>)<br>Defendant. ) | Case No: _____<br>(JURY TRIAL DEMANDED) |

## COMPLAINT

### INTRODUCTION

Plaintiffs, by and through their counsel, the law firms of Woodley & McGillivary LLP and Spivak Lipton LLP for their complaint against the New York City Housing Authority ("NYCHA"), hereby state as follows:

### PARTIES

1. Plaintiffs identified in the caption of this Complaint have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Such written consents are appended to this Complaint in the attached Appendix. These written consent forms set forth each plaintiff's name and address. The representative plaintiffs are Alexander Johnston, Darsharay Allen-Sore, Norma Delancey and Raymond Davenport. They bring this action as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) against the defendant on behalf of themselves and all others similarly situated because of defendant's unlawful deprivation of plaintiffs' rights to overtime compensation under the FLSA.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**FACTS**

4. Plaintiffs are, and at all times material herein have been, employed by the New York City Housing Authority ("NYCHA") in the position of Exterminator.

5. At all times material herein, representative plaintiff Alexander Johnston has worked as an Exterminator at NYCHA housing developments, Boulevard Houses, located at 812 Ashford St., Brooklyn, NY 11207 and Langston Hughes Apartments, located at 301 Sutter Ave., Brooklyn, NY 11212. At all times material herein, representative plaintiff Darsharay Allen-Sore has worked as an Exterminator at NYCHA housing developments, Douglass Houses, located at 825 Columbus Ave., New York, NY 10025, Wise Towers, located at 117 W. 90th St., New York, NY 10024 and Isaacs Houses, located at 403 E. 93rd St., New York, NY 10128. At all times material herein, representative plaintiff Norma Delancey has worked at Boulevard Houses. At all times material herein, representative plaintiff, Raymond Davenport has worked at NYCHA housing developments, Lincoln Houses, located at 60 E. 135th St., New York, NY 100037 and King Towers, located at 90 Malcolm X Blvd., New York, NY 10026.

6. Plaintiffs bring this action for a declaratory judgment, back pay and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the defendant's willful and unlawful violations of federal law complained of herein.

7. Each of the plaintiffs in this action while employed by defendant has been an "employee" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

8. Defendant New York City Housing Authority is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). NYCHA is a public benefit corporation organized under the New York public housing laws and is a legally separate entity from the City of New York. N.Y. Pub. Hous. Law §§ 30, 401. The New York City Housing Authority has a principal office and place of business located at 250 Broadway, New York, NY 10007, and may be served with process by serving the General Counsel at the New York City Housing Authority Law Department, 250 Broadway, 9th Floor, New York, NY 10007.

9. NYCHA is charged with providing decent and affordable housing in a safe and secure living environment for over 600,000 low- and moderate-income residents throughout the five boroughs of New York. NYCHA housing developments across the five boroughs provide residential apartments and community programs for New York City's most vulnerable population including seniors and the mobility impaired.

10. Within the last three years and continuing to date, while employed by defendant as Exterminators, plaintiffs Johnston, Allen-Sore, Delancey, Davenport, and other similarly situated Exterminators perform work in the prevention, control and elimination of insects, vermin and other pests from NYCHA buildings and surrounding areas, including parks. Plaintiffs' job duties include but are not limited to: inspecting areas of infestation; using insecticides, rodenticides, baits, traps, etc., to exterminate pests as required; selecting and preparing poisonous insecticides, etc., used in exterminating; cleaning and repairing extermination equipment; keeping records and making reports of extermination operations performed; and travelling to various housing developments to perform work.

11. While working as Exterminators, the representative plaintiffs routinely work over 40

3

hours a week and do not receive overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked over 40 in a week. From July 1 until the Monday after Labor Day (hereinafter referred to as "the summer months"), Exterminators are scheduled to work 40 hours a week, as their regular schedule, with one hour automatically deducted each day for meal periods. In all other months, Exterminators are regularly scheduled to work 42.5 hours per week, with one half hour automatically deducted each day for meal periods. In addition, and as described in further detail below, they frequently work overtime.

12. During the weeks that the plaintiffs worked more than 40 hours performing the work described in paragraph 10 above, the defendant has violated the FLSA in the following ways: (1) failing to pay plaintiffs for all hours worked by failing to compensate plaintiffs for work performed before the official start time of their shifts or after the official end time of their shifts, and by automatically deducting an hour or half hour for meal periods although work was performed during the unpaid meal period; and/or (2) failing to pay plaintiffs for overtime work performed over the 40 hour threshold until more than two pay periods after the work was performed.

13. At all times material herein, all persons who work for NYCHA as Exterminators are similarly situated because they perform job duties similar to those described in paragraph 10 above, work hours similar to those described in paragraph 11 above, and because they are subject to the defendant's pay practices described in paragraph 12 above.

*Failure to Compensate Plaintiffs for All Hours Worked*

14. Defendant fails to compensate plaintiffs for work hours that are performed before and after their shifts, and for work hours performed during plaintiffs' unpaid meal periods.

15. For example, representative plaintiff Alexander Johnston, is an Exterminator assigned to Boulevard Houses and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Johnston works over 40 hours in a workweek performing the job duties described in paragraph 10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Johnston is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

16. Approximately 4 to 5 times per week plaintiff Johnston arrives approximately 10 to 20 minutes or longer before the start of his shift and begins working. During this time, plaintiff Johnston changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He also prepares for roll call, receives his first assignments for the day, gathers his equipment and supplies and mixes the chemicals needed for his assignments. Approximately 1 to 2 times per month, plaintiff Johnston continues working for approximately 10 to 15 minutes after the end of his shift. During this time, he performs the job duties described in paragraph10, changes out of his uniform, cleans and returns his equipment and supplies, and turns in his work logs. When plaintiff Johnston must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. In addition, because NYCHA policy does not permit employees to wear their uniform home after the end of the shift, employees regularly change out of their uniform after the end of their

5

scheduled shift. The large volume of work also causes plaintiff Johnston to work through all or a portion of his meal period approximately 4 to 5 times per week, even though the entire period is unpaid. When plaintiff Johnston performs these unpaid work activities, it causes him to work in excess of 40 hours per week, for which he is not properly compensated. Defendant's timekeeping system, Kronos, records the uncompensated pre-shift work time and post-shift work time by the employees in increments of one minute. Once defendant produces the Kronos timekeeping records for each of the plaintiffs, the precise amount of uncompensated pre-shift and post-shift work time for each plaintiff can be determined on a daily basis.

17. For example, representative plaintiff Darsharay Allen-Sore, is an Exterminator assigned to Douglass Houses and works over 40 hours per week (excluding her unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Allen-Sore works over 40 hours in a workweek performing the job duties described in paragraph10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during her unpaid meal periods. During the summer months, plaintiff Allen-Sore is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, she is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday. Additionally, plaintiff Allen-Sore works overtime on Saturday and Sunday, every other month.

18. Approximately 4 to 5 times per week plaintiff Allen-Sore arrives approximately 10 to 20 minutes or longer before the start of her shift and begins working. During this time, plaintiff Allen-Sore changes into her uniform because NYCHA's work rules prohibit workers from

wearing their uniforms off-site. She also prepares for roll call, receives her first assignments for the day, gathers her equipment and supplies and mixes the chemicals needed for her assignments. Approximately 4 to 5 times per week, plaintiff Allen-Sore continues working for approximately 10 to 20 minutes after the end of her shift. During this time, she performs the job duties described in paragraph10, changes out of her uniform, cleans and returns her equipment and supplies, and turns in her work logs. When plaintiff Allen-Sore must work past the end of her shift, it is because she has received an assignment near the end of her shift that must be completed that day. In addition, because NYCHA policy does not permit employees to wear their uniform home after the end of the shift, employees regularly change out of their uniform after the end of their scheduled shift. The large volume of work also causes plaintiff Allen-Sore to work through all or a portion of her meal period approximately 2 times per week, even though the entire period is unpaid. When plaintiff Allen-Sore performs these unpaid work activities, it causes her to work in excess of 40 hours per week, for which she is not properly compensated. Defendant's timekeeping system, Kronos, records the uncompensated pre-shift work time and post-shift work time by the employees in increments of one minute. Once defendant produces the Kronos timekeeping records for each of the plaintiffs, the precise amount of uncompensated pre-shift and post-shift work time for each plaintiff can be determined on a daily basis.

 19. For example, representative plaintiff Norma Delancey, is an Exterminator assigned to Boulevard Houses and works over 40 hours per week (excluding her unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Delancey works over 40 hours in a workweek performing the job duties described in paragraph10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work

performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during her unpaid meal periods. During the summer months, plaintiff Delancey is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, she is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

20. Approximately 4 to 5 times per week plaintiff Delancey arrives approximately 10 to 20 minutes or longer before the start of her shift and begins working. During this time, plaintiff Delancey changes into her uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. She also prepares for roll call, receives her first assignments for the day, gathers her equipment and supplies and mixes the chemicals needed for her assignments. Approximately 1 to 2 times per month, plaintiff Delancey continues working for approximately 10 to 20 minutes after the end of her shift. During this time, she performs the job duties described in paragraph10, changes out of her uniform, cleans and returns her equipment and supplies, and turns in her work logs. When plaintiff Delancey must work past the end of her shift, it is because she has received an assignment near the end of her shift that must be completed that day. In addition, because NYCHA policy does not permit employees to wear their uniform home after the end of the shift, employees regularly change out of their uniform after the end of their scheduled shift. The large volume of work also causes plaintiff Delancey to work through all or a portion of her meal period approximately 3 to 4 times per week, even though the entire period is unpaid. When plaintiff Delancey performs these unpaid work activities, it causes her to work in excess of 40 hours per week, for which she is not properly compensated. Defendant's timekeeping system, Kronos, records the uncompensated pre-shift work time and post-shift work time by the employees in increments of one minute. Once defendant produces the

Kronos timekeeping records for each of the plaintiffs, the precise amount of uncompensated pre-shift and post-shift work time for each plaintiff can be determined on a daily basis.

21. For example, representative plaintiff Raymond Davenport, is an Exterminator assigned to Lincoln Houses and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Davenport works over 40 hours in a workweek performing the job duties described in paragraph10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Davenport is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

22. Approximately 4 to 5 times per week plaintiff Davenport arrives approximately 10 to 20 minutes or longer before the start of his shift and begins working. During this time, plaintiff Davenport changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He also prepares for roll call, receives his first assignments for the day, gathers his equipment and supplies and mixes the chemicals needed for his assignments. The large volume of work also causes plaintiff Davenport to work through all or a portion of his meal period approximately 4 to 5 times per week, even though the entire period is unpaid. When plaintiff Davenport performs these unpaid work activities, it causes him to work in excess of 40 hours per week, for which he is not properly compensated. Defendant's timekeeping system, Kronos, records the uncompensated pre-shift work time and post-shift work time by the

employees in increments of one minute. Once defendant produces the Kronos timekeeping records for each of the plaintiffs, the precise amount of uncompensated pre-shift and post-shift work time for each plaintiff can be determined on a daily basis.

23. The defendant knew or should have known plaintiffs perform the work described above because: plaintiffs must consistently perform work outside of their scheduled shifts to complete their assigned duties; plaintiffs' supervisors witness plaintiffs working outside their scheduled shifts; defendant is aware of the staffing requirements and volume of work that must be completed; and plaintiffs' hours are captured on defendant's timekeeping system, Kronos. The amount of uncompensated time each plaintiff Exterminator has worked in excess of 40 hours a week can be determined through an analysis of defendant's own records. This is true for both the representative plaintiffs and all of the other current and former employees of defendant employed during the past three years in the position of Exterminator at NYCHA.

### *Late Payment of Overtime Worked*

24. When plaintiffs work beyond 40 hours in a workweek and are paid for overtime compensation, defendant delays the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours. The delay in payment is caused by defendant's managerial staff's failure to transmit purportedly necessary information to payroll, or because defendant simply does not want to incur the cost for budgetary reasons in that particular financial quarter, or for other reasons that are unrelated to defendant's ability to determine the amount of overtime compensation that is owed to the plaintiffs.

25. Similar to the representative Exterminators identified above, each of the other potential putative plaintiff Exterminators are paid for overtime more than two pay periods after the plaintiffs worked and earned the overtime compensation. The precise number of times this

happened to each Exterminator, and the precise amount of overtime compensation that was delayed in in each instance can be found in work and pay records for the plaintiffs and all others similarly situated, which are in the exclusive possession, custody and control of defendant.

26. In addition, plaintiffs are eligible to receive premium payments in addition to their hourly pay and plaintiffs believe that these are not included in the rate at which overtime is paid. Defendant's payroll records will reveal the extent to which such regular rate violation of the FLSA occurs.

27. In addition, at times during the relevant time-period, plaintiffs would have been eligible to receive compensatory time in lieu of cash for overtime work performed. Plaintiffs believe that these compensatory time hours were paid at a straight time rate, rather than at the time and one-half rate, which is a violation of the FLSA. The Defendant's payroll records will reveal the extent to which this violation of the FLSA occurs.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK AND FAILURE TO PAY OVERTIME AT ONE AND ONE-HALF TIMES PLAINTIFFS' REGULAR RATES OF PAY IN VIOLATION OF SECTION 7(a) OF THE FLSA

28. Plaintiffs hereby incorporate by reference paragraphs 1 through 27 in their entirety and restate them herein.

29. At all times material herein, during those workweeks in which the plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week, they have performed work activities without compensation before the start of their shifts and after their shifts, and also during their unpaid meal periods. Accordingly, as a result of these pay practices, defendant has

failed to provide plaintiffs and all others similarly situated with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

30. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of forty hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA in the manner outlined herein by failing to compensate plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their shifts, during their uncompensated meal periods and after the official end time of their shifts. In addition, the rate at which overtime has been paid has not included all premiums the plaintiffs are eligible to receive as required under Section 207(a) of the FLSA.

31. As a result of defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for the plaintiffs are in the exclusive possession, custody and control of the defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to the plaintiffs from which the amount of defendant's liability can be ascertained.

32. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

33. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

## FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR EVEN MONTHS AFTER THE OVERTIME HAS BEEN WORKED

34. Plaintiffs hereby incorporate by reference paragraphs 1 to 33 in their entirety and restate them herein.

35. The FLSA mandates that overtime compensation be paid on the regular pay day for the period in which such workweek ends. Overtime payments under the Act may not be delayed except as reasonably necessary to compute the amount owned and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying plaintiffs' overtime payments for working in excess of 40 hours a week by weeks and in some cases months, with such delay not being reasonably necessary to compute calculating plaintiffs' overtime pay.

36. Defendant's failure to pay plaintiffs FLSA overtime pay in a timely manner and its withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

37. As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined. The employment and work records for the plaintiffs and all others similarly situated are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them, but from these payroll records, plaintiffs will be able to ascertain the precise extent of these violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a). Defendant is under a duty imposed under the FLSA, 29 U.S.C.

§ 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs and other employees similarly situated from which the amount of defendant's liability can be ascertained.

38. Pursuant to 29 U.S.C. § 216(b), plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

39. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray that this Court:

(a) Enter judgment declaring that the defendant has willfully and wrongfully violated its statutory obligations, and deprived each of the plaintiffs, and all those similarly situated, of his and her rights;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs, and all others similarly situated, are entitled;

(c) Award plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation;

(d) Award plaintiffs and all others similarly situated interest on their unpaid compensation;

(e) Award plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.

Respectfully submitted,

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary
David Ricksecker
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
gkm@wmlaborlaw.com

*/s/ Hope Pordy*
Hope Pordy
SPIVAK LIPTON LLP
1700 Broadway
Suite 2100
New York, N.Y 10019
Phone: (212) 765-2100
Fax:  (212) 765-8954
hpordy@spivaklipton.com